UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

                Plaintiff,                Criminal No. 07-208-HA

                                              OPINION AND ORDER

     v.

CENEN BELTRAN,

                Defendant.

HAGGERTY, Chief Judge:

On June 7, 2007, defendant was indicted for possession of a firearm by an illegal alien. Defendant filed a motion to suppress [18], and the government responded. The court heard testimony on January 3, 2008. For the following reasons, defendant's motion is denied.

**I.    Factual Background**

Page 1    Opinion and Order

On June 6, 2007, law enforcement officers executed two search warrants in connection with a suspected drug trafficking conspiracy. At approximately 6:03 a.m., they executed a federal search warrant for a residence located at 4270 Cordon Rd. NE, Salem, Oregon. Once at the property, officers learned that defendant Cenen Beltran rented only the outbuildings on the property. At approximately 9:45 a.m., another team executed a search warrant at El Campesino Restaurant at 2630 Fairgrounds Rd. NE, Salem, Oregon. Defendant had arrived at El Campesino, where he was a manager at approximately 9:00 a.m. Salem Police Officer Lawrence Schmaltz was waiting in the parking lot, and he told defendant that he could not open the restaurant until the search warrant was executed, and they spent the next 45 minutes together, waiting for federal agents. During this time, defendant asked and was allowed to go to the restroom. Officer Schmaltz testified that he never told defendant he could leave, nor that he must remain at El Campesino. Defendant testified that Officer Schmaltz told him that the federal agents wanted to speak with him.

During the execution of the search warrant at the restaurant, federal agents asked defendant numerous questions. In response to questions from Immigration and Customs Enforcement (ICE) Agent Mike Williams, the defendant stated he was in the country illegally. While agents spoke with defendant, at least one employee arrived at the restaurant, spoke with law enforcement officers, and subsequently left. No one ever told defendant that he was free to leave, nor did any agent tell defendant that he must remain at the restaurant. Defendant testified, however, that he felt pressured to answer the agents' questions, although he did not outwardly express this to the officers. Defendant also testified that he wanted to stay at the restaurant in order to open it in time for the lunch customers. At ICE Agent Guy Gino's request, with Drug

Enforcement Administration (DEA) Agent Josh Cook as a witness, defendant gave written consent to search the horse barn, the travel trailer, a vehicle, a greenhouse and the curtilage at 4270 Cordon Road. Defendant was told the agents would apply for a search warrant in the event he denied consent. Agent Gino also advised the defendant that he could withdraw his consent at any time. Defendant said he had nothing to hide and signed a consent form written in Spanish. During the signing of the consent form, defendant told the agents that he had a pistol and a rifle in the trailer on the property at 4270 Cordon Rd. Those firearms were found at the location.

Defendant was placed under arrest after the firearms were found, and was transported to the Salem DEA office, where at approximately 1:05 p.m., Agents Cook and Gino interviewed him. Agent Gino read defendant his *Miranda* warnings from a Salem Police department pre-printed Spanish *Miranda* Warnings card. Defendant signed an acknowledgment of *Miranda* rights. Defendant then agreed to speak to the officers and denied knowledge of the drug trafficking conspiracy for which the officers had obtained the warrants to search the defendant's restaurant and the Cordon Road residence.

**II.    Analysis**

Defendant moves to suppress the statements he made to officers while at El Campesino Restaurant, as well as the rifle and gun found on the property rented by defendant. Defendant asserts that his *Miranda* rights were violated, his statements to the officers were involuntary, and his consent to search the outbuilding was invalid.

   **1.    *Miranda* Violation**

Defendant argues that the agents failed to give him any *Miranda* warnings prior to interrogating him, and that therefore, his statements should be suppressed.

Page 3    Opinion and Order

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court set forth the legal standard for analyzing the admissibility of a defendant's statements when the defendant is in police custody and subject to interrogation. Specifically, the government must advise the defendant of the defendant's right to remain silent and the right to the presence of counsel before beginning custodial interrogation. *Id.* at 479. "Interrogation is 'express questioning' by the police, or 'any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Hernandez*, 476 F.3d 791, 796 (9th Cir. 2007) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). "An individual is in custody if considering the circumstances surrounding an interrogation 'a reasonable person . . . felt he or she was not at liberty to terminate the interrogation and leave.'" *Id.* (quoting *Thompson v. Keohane,* 516 U.S. 99, 112 (1995)). Relevant factors to consider in analyzing whether a person was in custody include "the language used by the officers, the physical characteristics of the place where the question occurs, the degree of pressure applied to detain the individual, the duration of the detention, and the extent to which the person was confronted with evidence of guilt." *United States v. Butler,* 249 F.3d 1094, 1099 (9th Cir. 2001).

While it is clear that the officers were interrogating defendant at El Campesino, defendant was not in custody during the interrogation. The questioning took place at defendant's place of employment, a familiar location. While defendant testified that he felt pressured, there is no evidence that the officers used threatening or coercive language, or that undue pressure was applied. In fact, defendant moved around the restaurant and parking lot while with Officer Schmaltz, as well as while the agents executed the search warrant. Further, at least one other

Page 4    Opinion and Order

employee spoke with officers at the scene and subsequently left. Finally, defendant indicated that he wanted to stay to open the restaurant, negating any inference that his presence was compelled.

Defendant relatedly argues that his statements to law enforcement were involuntary because the officers compelled him to make incriminating statements and led him to believe he had no rights. However, as discussed above, defendant was not in custody at the time he made incriminating statements, and there is no evidence that his will was overborne by the officers.

### 2.     Consent

"It is well settled that a search conducted pursuant to a valid consent is constitutionally permissible." *United States v. Soriano*, 361 F.3d 494, 501 (9th Cir. 2004) (quotation omitted). "Whether consent to search was voluntarily given is to be determined from the totality of all the circumstances. It is the government's burden to prove that the consent was freely and voluntarily given." *Id.* (quotation omitted). The Ninth Circuit considers five factors when determining whether a person has freely consented to a search: "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained." *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000). In *Cormier*, the Ninth Circuit also noted that "it is not necessary for all five factors to be satisfied in order to sustain a consensual search, "but rather, "a district court [must] consider the totality of the circumstances when evaluating consent." *Id*. at 1113.

As discussed above, defendant was not in custody when he consented to the search. The officers did not have their guns drawn. Defendant had not been read his *Miranda* rights. He was

not told that he could refuse consent, and the officers did tell defendant that a search warrant could be obtained. Although several of these factors weigh against a finding of voluntariness, the totality of the circumstances indicate that defendant's consent was voluntary. First, defendant was not in custody or seized when he signed the written consent, therefore no *Miranda* warning was appropriate. Further, whether the officers informed defendant that a search warrant could be obtained is not determinative, but "hinges on whether a suspect is informed about the possibility of a search warrant in a threatening manner." *Cormier*, 220 F.3d at 1112. Here, officers had in fact already obtained a search warrant for the residence at 4270 Cordon Road, and there is no evidence that the officers were acting in a threatening manner by informing defendant that a search warrant could be obtained for the outbuildings on the property. Finally, the officers told defendant he could revoke his consent, yet there is no evidence that defendant ever did so.

Based on the totality of the circumstances and after considering the applicable factors, this court concludes that defendant voluntarily consented to the search.

### III. Conclusion

Based on the foregoing, defendant's Motion to Suppress Statements and Physical Evidence Seized [18] is DENIED.

IT IS SO ORDERED

DATED this  7  day of January, 2008.

/s/ ANCER L. HAGGERTY

ANCER L. HAGGERTY
United States District Judge